IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GLENN E. LEONARD,** | Case No. 2:18-cv-00893-AC |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COLLETTE PETERS,** Director of the Oregon Department of Corrections; **DAVID PEDRO,** Former Operations Captain at Two Rivers Correctional Institution; **ADAM ARCHER,** Former Correctional Lt. at Two Rivers Correctional Institution; **STEVE BRUCE,** Former TRCI Housing Sgt.; **M. GIBSON,** Correctional Officer, | |
| Defendants. | |

Ellen F. Rosenblum, Attorney General; Nathaniel Aggrey, Assistant Attorney General; and Shannon M. Vincent, Senior Assistant Attorney General; Oregon Department of Justice, 1162 Court Street NE, Salem, OR 97301. Attorneys for Defendants.

**IMMERGUT, District Judge.**

On December 18, 2020, Magistrate Judge John V. Acosta issued his Findings and

Recommendation ("F&R"), ECF 106, recommending that this Court grant Defendants' Motion

for Summary Judgment, ECF 87.

PAGE 1 – ORDER

Judge Acosta found that any section 1983 claims against defendants in their official capacities are barred by the Eleventh Amendment but that, with respect to individual capacity claims, Plaintiff had sufficiently shown personal involvement. ECF 106 at 14–17. Nevertheless, Judge Acosta found that Plaintiff did not provide sufficient evidence to demonstrate that Defendants violated his First, Eight, and Fourteenth Amendment rights and accordingly recommended granting summary judgment in favor of Defendants. *Id*. at 17–26. Alternatively, assuming a constitutional right had been violated, Judge Acosta found that qualified immunity applied to bar the claim. *Id*. at 26–28. Having recommended dismissal of Plaintiff's section 1983 claims, Judge Acosta recommended declining to exercise supplemental jurisdiction over Plaintiff's remaining negligence claim. *Id*. at 28–29.

Plaintiff filed timely Objections to the F&R on March 5, 2021. Plaintiff's Objections total 64 pages of briefing and 52 pages of exhibits. ECF 114; ECF 114-1. Defendants responded to those objections on March 10, 2021 with two paragraphs, incorporating by reference their earlier briefing. ECF 115.

This Court has reviewed de novo the portions of the F&R to which Plaintiff objected. The Court adopts Judge Acosta's F&R as explained and supplemented in this Opinion.

## STANDARDS

Under the Federal Magistrates Act ("Act"), as amended, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If a party objects to a magistrate judge's F&R, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* But the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149–50 (1985); *United States v.*

PAGE 2 – ORDER

*Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Act "does not preclude further review by the district judge, *sua sponte*" whether de novo or under another standard. *Thomas*, 474 U.S. at 154.

## DISCUSSION

This Court has reviewed de novo the portions of the F&R to which Plaintiff objected and adopts the F&R subject to the additional discussion below.

### A. Claims against Bruce, Peters, Archer, and Pedro fail at objective prong of Eighth Amendment claim

This Court agrees with the F&R's Eighth Amendment analysis and writes only to supplement that discussion as follows.

"General intimidation, harassment, and nonspecific threats, . . . although undesirable, do not demonstrate a constitutionally intolerable risk of harm." *Chandler v. Amsberry*, No. 3:08-CV-00962-SI, 2014 WL 1323048, at *7 (D. Or. Mar. 28, 2014) (citing *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir.2007)) (discussing, following bench trial, plaintiff's allegation that he was "subjected to implied threats through hostile stares and body language and offensive comments"). On an Eighth Amendment deliberate indifference claim on a theory of preventing future harm, the plaintiff must "present evidence of a specific or direct threat of imminent bodily harm and the ability of another to effectuate that harm." *Id*. at *8; *see also Helling v. McKinney*, 509 U.S. 25, 34 (1993) (describing protection against "sufficiently imminent dangers").

Here, Plaintiff does not provide sufficient evidence to create a triable issue of fact on the objective element of his Eighth Amendment claims. Plaintiff was admitted to TRCI in July 2012, and there is no evidence of unpleasant interactions between Plaintiff and any other inmates since then, other than in late 2016 and early 2017. *See* ECF 95 at 9–12 (Plaintiff's response on this point arguing only that he was transferred to TRCI due to gang risks at prior facility and that

TRCI housed him with that same gang; not mentioning any unpleasant interactions once at TRCI). Once assigned to unit 7 in late 2016, Plaintiff expressed concerns to Defendants using phrases such as "imminent danger" even before entering unit 7, based on his belief that "historically [] non-gang members w[]ere subjected to assaults and menacing." ECF 96-2 at 19–21. Once Plaintiff entered unit 7, Plaintiff never reported that any harassment exceeded "faux swings." *Id*. The evidence shows that Plaintiff endured the admittedly unpleasant sort of harassment that does not establish the objective element of an Eighth Amendment failure to protect claim. Crump's February 4, 2017 approach toward Leonard's cell did not demonstrate, as Plaintiff contends in his objections, that it was "obvious" that Crump, or any unnamed gang member, would attack Plaintiff on February 10, 2017. ECF 114 at 13. Plaintiff did not face an objectively substantial, or sufficiently imminent, risk of harm at that time.

After the February 10, 2017 incident, Plaintiff was transferred to unit 5 that same day, and Crump was immediately disciplined and placed in segregation for nearly four months. ECF 96-1 at 37-45 ECF 106 at 8; ECF 88-3 at 1; ECF 88-1 at 1. Plaintiff did not report any other threats or harassment after February 10. Plaintiff argues that beginning in June 2017, when Crump was released from segregation and returned to unit 7, Crump had the opportunity to attack Plaintiff when their paths crossed at call-outs (as they now lived in different units). ECF 114 at 42. This possibility, based on one non-physical and one physical incident almost four months earlier, does not raise a genuine dispute as to whether Plaintiff endured an objectively sufficiently serious or imminent risk of harm due to Crump.

In sum, the evidence shows that since arriving at TCRI in 2012, Plaintiff suffered only generally unpleasant harassment in late 2016 and early 2017 by nameless individuals, and two specific incidents in the dayroom, only one of which was physical and both of which were met

PAGE 4 – ORDER

immediately with reasonable discipline. The day of the physical incident, Plaintiff was transferred to a different unit; since then he has reported no further unpleasant interactions. The evidence does not raise a genuine dispute of fact that Plaintiff faced an objectively substantial risk of harm while at TRCI, nor that Defendants knew of and disregarded such a risk. *See Funk v. Schriro*, No. CV08-0739-PHX-GMS (JCG), 2009 WL 4898262, at *7 (D. Ariz. Dec. 14, 2009) (dismissing where Plaintiff averred that "while housed at CB 6, he was subjected to a 'constant threat of violence'" and described one incident of assault in a year-long period); *cf. Galligar v. Franke*, No. 2:12-CV-01891-PK, 2015 WL 10373492, at *3 (D. Or. Dec. 28, 2015) (denying defendant's motion for summary judgment because of (1) defendants' "inaction" by not removing plaintiff from shared cell with white supremacist gang member after the latter kicked plaintiff in the throat and plaintiff told defendants he feared for his safety, and (2) an undisputed "long-standing dispute with various white supremacist prison gangs" that included "six physical altercations between [plaintiff] and other inmates prior to the two [cellmate] altercations"), *report and recommendation adopted*, No. 3:12-CV-01891-PK, 2016 WL 756473 (D. Or. Feb. 24, 2016); *Berg v. Kincheloe*, 794 F.2d 457, 462 (9th Cir. 1986) ("If the evidence only involves a 'dispute over the . . . existence of arguably superior alternatives'" to the choice of action defendants took, "the plaintiff has not met his burden and the case should not be presented to a jury.") (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

**B.  Claim 24: Fourteenth Amendment procedural due process**

This Court agrees with the F&R's Fourteenth Amendment due process discussion. ECF 106 at 22–23. The Court writes to supplement that analysis with the following independent reason justifying a grant of summary judgment and to address a due process claim arguably raised in Plaintiff's Second Amended Complaint.

"The law is well established that prisoners do not have a constitutional right to a specific prison grievance procedure, nor do they have a liberty interest in the grievance process protected by the Due Process Clause." *Matthews v. Taylor*, No. 2:16-CV-01958-SB, 2018 WL 4441524, at *12 (D. Or. Apr. 24, 2018), *report and recommendation adopted in part, rejected in part*, No. 2:16-CV-01958-SB, 2018 WL 4431318 (D. Or. Sept. 17, 2018); *see also Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Gonzalez v. Mullen*, 446 F. App'x 17, 18 (9th Cir. 2011) ("The district court properly dismissed Gonzalez's due process claim concerning the alleged improper processing of his grievance because Gonzalez has no due process right to the handling of grievances in any particular manner."). Accordingly, Pedro's alleged interference in the investigation of his own misconduct does not give rise to a Fourteenth Amendment procedural due process claim.

Plaintiff also argues that Pedro prevented him from filing a timely grievance against Bruce by not providing him with the rules governing Bruce's job duties. ECF 114 at 37, 55 & n.14. Plaintiff arguably alludes to this claim in his Second Amended Complaint. *See* ECF 76 at 21, 24–25 (alleging due process violation against Pedro based only on his "conducting a 'sham investigation' into his own conduct," but also alleging First Amendment violation by Pedro "provid[ing] false information to Mr. Leonard that caused the Plaintiff to default on the ODOC grievance process and a 42 U.S.C. § 1997e violation").[1] Plaintiff does not sufficiently develop or engage with the facts of this arguable claim to raise a genuine dispute of fact at summary judgment. For example, Plaintiff does not engage with the various exceptions to PLRA's exhaustion requirement where administrative remedies are "effectively unavailable." *Sapp*, 623

---

[1] The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), "requires a prisoner to exhaust his administrative remedies before filing a lawsuit concerning prison conditions" under section 1983. *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010) (citation omitted).

F.3d at 822–23 (discussing examples, such as where prisoner's failure to exhaust was excused because he "reasonably believed . . . that [prison] regulation was necessary, not merely useful, to prepare his appeal," and where "prison officials refuse[d] to give a prisoner the forms necessary to file an administrative grievance") (quotation marks and citations omitted). Plaintiff also does not explain why Plaintiff's prior grievance against Bruce, submitted on February 12, 2017—before Plaintiff ever spoke to Pedro—would not satisfy the PLRA's exhaustion requirements. *See* ECF 96-2 at 22, 86–87. Plaintiff also does not explain how Pedro's actions caused either of the alleged harms in claim 20, defaulting on the grievance process or violating the PLRA . The incident at issue occurred on February 10, 2017. Plaintiff's first grievance was denied on February 21, 2017. ECF 96-2 at 22, 87. Plaintiff first reached out to Pedro on March 30, 2017—which was more than a month after the February 10, 2017 incident, and even more than a month since the February 21, 2017 denial of the first grievance. *See* ECF 96-2 at 22–23, 87; ECF 114 at 55 n.14 (Plaintiff's objections stating that "the inmate must file a grievance within 30 days of the alleged condition or incident"). Indeed, Plaintiff appeared at the time to assign blame for the tardiness of his intended second grievance to Bruce, not Pedro. *See* ECF 96-2 at 87 (grievance form stating that "Bruce slow-played answering my CD214 which requested that information" before telling Plaintiff to contact Pedro). Lastly, in the alternative, Pedro is entitled to qualified immunity with respect to this due process claim.

**C. First Amendment Retaliation**

To succeed on a First Amendment retaliation claim in the prison context, a plaintiff must prove: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took an adverse action against the plaintiff; (3) a causal connection exists between the plaintiff's conduct and the defendant's adverse action; (4) the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities[;]" and (5) the defendant's retaliatory

PAGE 7 – ORDER

action did not advance the legitimate penological goals of the correctional institution. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citations and internal quotation marks omitted). The defendant's adverse action "need not be an independent constitutional violation. The mere threat of harm may be an adverse action. . . ." *Id*. (citations and internal quotation marks omitted).

### 1. Claims that fail at elements one, two, three, or five.

Claims 18 and 19, which allege adverse actions taken on March 30, 2017, ECF 76 at 20–21, fail at summary judgment. Plaintiff's arguments and evidence establish that around March 30, 2017, Pedro did not know of—and thus could not retaliate against—Plaintiff's prior or intended First Amendment activity.[2] Pedro asked why Plaintiff wanted his requested information weeks later. *See* ECF 96-2 at 7 (Plaintiff's memorandum of April 18, 2017 meeting, in which Pedro "continually pushed to know why I was attempting to acquire the rules and regulations that governed Steve Bruce's job posting"). In his objections to the F&R, Plaintiff limits his arguments to what Pedro learned on April 18, 2017, conceding that Pedro could not have retaliated before that date. ECF 114 at 36–37 (objecting that the "first 'adverse action' was . . . [i]n the April 18, 2017 meeting"). As to the tort notice, Plaintiff's evidence demonstrates that Pedro was unaware of that filing until even later. *See* ECF 96-2 at 10 (Plaintiff's memorandum

---

[2] Plaintiff also fails to raise genuine disputes of fact on the "adverse action" and "causation" elements. There is no evidence that Pedro "reacted violently" on March 30, 2017, as alleged in claim 18. ECF 76 at 20. Pedro and Plaintiff's first in-person interaction occurred weeks later. Nor does Pedro "provide[] false information" on March 30, 2017, as alleged in claim 19. ECF 76 at 21. Plaintiff had asked "to know the rule/ODOC Policy/OAR" used for housing assignments, and Pedro responded via message on March 31, 2017: "It isn't a rule, policy or OAR (that['s] the rule). We employ the Cellmate Compliance Program whenever possible. Unfortunately, (unlegible [sic]) we cannot for a (unlegible [sic]) of reasons. Is there something specific your [sic] looking for?" ECF 114-1 at 20. Pedro provided the name of the "Cellmate Compliance Program" and asked a clarifying question.

of April 24, 2017 meeting between Plaintiff and Pedro, in which Pedro "accused [Plaintiff] of lying to him on April 19, 2017, because [Plaintiff] had not volunteered that [Plaintiff] had filed a Tort against ODOC").

Claims 22 and 28 fail because Plaintiff has not raised a genuine dispute of material fact that the alleged adverse action—"withholding" the inmate conflict report (ICR) policy—did not advance a legitimate penological objective. *See* ECF 76 at 23, 27 (claims 22 and 28). This Court agrees with and adopts the F&R's analysis of the ICR denials with respect to the penological objective element. ECF 106 at 25-26.[3] Plaintiff also fails to raise a triable issue that Defendants' actions—denying conflict requests where at least some grounds warranted such denials—would chill a person of ordinary firmness from future First Amendment activities.

Claims that Defendants Pedro and Archer participated in an agreement or conspiracy to withhold the ICR policy from Plaintiff in violation of the First Amendment also fail at summary judgment. *See, e.g.,* ECF 76 at 25 (claim 25), 29 (claim 31), 31-33 (claims 34 and 35); ECF 114 at 40, 55 (explaining the "Fourteenth Amendment liberty interest" asserted in claims 34 and 35

---

[3] In his objections, Plaintiff only argues that Pedro's alleged *threats* did not advance a penological interest, rather than the "withholding" of the ICR policy itself. *See* ECF 114 at 58–59, 61–62. The threats will be addressed below. Plaintiff also argues in his objections that Archer did not interview him within 30 days as the conflict policy requires. ECF 114 at 40–41. Plaintiff does not address the many other justifications that Archer provided for denying Plaintiff's conflict requests. For example, Archer noted the lack of supporting documentation submitted, Plaintiff's and Crump's separation during Crump's disciplinary segregation, the lack of information showing that Crump was affiliated with a gang, the lack of documented prior conflicts or gang-related housing concerns with Crump, and the fact that altercations are common and not every dispute rises to a "conflict" under the policy. *See generally* ECF 89 (Archer Decl.). Otherwise, housing inmates would be impossible. *Id.* at ¶ 14. Requiring supporting information to show a threat of serious harm "prevents inmates from abusing the process by reporting various, unsubstantiated 'conflicts' with other inmates in order to force ODOC to make particular housing, placement, transportation or program assignments." *Id.* at ¶ 10. Plaintiff did not address these penological objectives and accordingly has not raised a genuine dispute of fact as to this element.

PAGE 9 – ORDER

concerns a First Amendment retaliation theory). To assert a conspiracy claim under § 1983, the plaintiff must show "'(1) the existence of an express or implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement.'" *Klein v. Williams*, 714 F. App'x 631, 636 (9th Cir. 2017) (quoting *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010)) (applying standard to First Amendment retaliation claim). At the second element, as explained above, Plaintiff does not raise a genuine dispute that the denials of the conflict requests did not advance a legitimate penological goal or that the objective chilling standard is satisfied. Accordingly, Plaintiff does not raise a genuine issue of material fact as to whether an actual First Amendment violation resulted from the alleged conspiracy.

    **2.  Claims that fail at element four.**

Claims 20, 21, and 23 fail at the fourth element of First Amendment retaliation.

As relevant to these three claims, three meetings between Pedro and Plaintiff occurred over roughly four months in 2017. On April 1, Plaintiff wrote to Pedro and asked him "to clarify and tell me where I could find the 'Cellmate Compliance Program['] to read about it." ECF 96-2 at 23. According to Plaintiff, on or about April 14 or 18, Pedro called Plaintiff to a meeting and asked him "why [Plaintiff] wanted that information." *Id*.; ECF 96-2 at 7–8; ECF 114-1 at 39 (handwritten change from April 14 to April 19, 2017). Plaintiff "explained the situation that I had been forced to endure on unit 7." ECF 96-2 at 23. Pedro "became very ang[]ry and aggressive. He stated that if I was not content with my current housing that he could find me some 'altern[a]tive housing.'" *Id*. at 23; *see also id*. at 7. "Pedro stated that if I continued to push this issue I may find myself some place I don't think is so safe." *Id.* at 7. On April 24, 2017, Pedro met with Plaintiff and accused Plaintiff of lying to him because Plaintiff "had not volunteered that I had filed a Tort against ODOC." ECF 96-2 at 10. Pedro told Plaintiff, "you are

PAGE 10 – ORDER

now on my shit-list, don't you ever ask me or any of my staff for anything." *Id*. Over the next few months, Plaintiff corresponded via kyte with Defendants Archer and Peters about the status of his conflict requests and filed a grievance against Archer. *See* ECF 106 at 11 (F&R factual background); ECF 96-2 at 46 (Plaintiff's memorandum). Plaintiff was called in to speak with Pedro, as well as Archer, roughly four months after the April meetings. At that August 22, 2017 meeting, Pedro asked, "Didn't I direct you to not ask my staff for anything?" and "threatened to 'hold' [Plaintiff] 'accountable' for violating his directive." ECF 96-2 at 46. Pedro then sent Plaintiff back to his unit, and Plaintiff wrote to multiple officials, including at the Department of Justice, regarding Pedro. *Id*. at 47.

At the fourth element, Plaintiff must satisfy the objective standard that the adverse action at issue "would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quotation marks and citation omitted). If a plaintiff only "alleges he suffered some other harm," he may still have presented a viable First Amendment retaliation claim because more than minimal harms may have a chilling effect.[4] *Id*. at 1269; *Rhodes v. Robinson*, 408 F.3d 559, 562 n.11 (9th Cir. 2005). On summary judgment, "the plaintiff must demonstrate there is a triable issue of material fact on each element of his claim, as opposed to merely alleging facts sufficient to state a claim." *Brodheim*, 584 F.3d at 1269 n.3.

---

[4] Plaintiff focuses in his objections on the objective chilling standard rather than any other "more than minimal harm." *See, e.g.,* ECF 114 at 38–40. Plaintiff had alleged that Pedro and Archer, along with the other defendants, were responsible for not replacing his eyeglasses. *See, e.g.,* ECF 76 at 22–23. Plaintiff did not produce any evidence that Pedro or Archer were involved with the eyeglasses replacement issue, and Plaintiff does not raise this issue in his objections. *See generally* ECF 114.

PAGE 11 – ORDER

Some would-be retaliatory action, such as "bad-mouthing" or non-impending, not sufficiently serious verbal threats, is "so insignificant that it does not deter the exercise of First Amendment rights." *Coszalter v. City of Salem*, 320 F.3d 968, 975–76 (9th Cir. 2003); *see also McGiboney v. Corizon*, No. 1:18-CV-00529-DCN, 2021 WL 1092222, at *28 (D. Idaho Mar. 22, 2021) ("Povar's alleged statement [that plaintiff would not receive medical treatment], while improper, does not amount to the type of threat or intimidation of impending punishment sufficient to deter a person of ordinary firmness."); *Wray v. Garton*, No. 3:18-CV-01617-SB, 2020 WL 1330234, at *4 (D. Or. Mar. 2, 2020) ("The Court finds that no reasonable jury could conclude that Deputy Smith's vague threat of future rule violations, which never materialized, would chill or silence a person of ordinary firmness from pursuing a grievance. . . ."), *report and recommendation adopted*, No. 3:18-CV-01617-SB, 2020 WL 1325354 (D. Or. Mar. 18, 2020); *Woodroffe v. Rosenblum*, No. 2:15-CV-02390-SB, 2018 WL 5091622, at *9 (D. Or. Sept. 28, 2018) (finding threats of segregation insufficient), *report and recommendation adopted sub nom. Woodroffe v. Curtis*, No. 2:15-CV-2390-SB, 2018 WL 5085755 (D. Or. Oct. 18, 2018), aff'd, 836 F. App'x 636 (9th Cir. 2021); *Quezada v. Roy*, No. 14 CIV. 4056 CM, 2015 WL 5970355, at *23 (S.D.N.Y. Oct. 13, 2015) (dismissing some First Amendment claims "because [the] disgusting, offensive and highly unprofessional conduct does not rise to the level of a constitutional tort (which is to say, it is not sufficiently serious to deter a person of ordinary firmness from continuing to exercise his First Amendment rights)"; but not dismissing a claim based on a threat to kill the plaintiff because it was "sufficiently serious" and a threat to "seriously harm" plaintiff); *Nazarzai v. Cty. of Orange*, 845 F. App'x 559, 560 (9th Cir. 2021) (finding plaintiff failed to satisfy objective standard at trial based on "threats and intimidation"); *cf. Watison v. Carter*, 668 F.3d 1108, 1115–16 (9th Cir. 2012) (finding fourth element satisfied

because plaintiff alleged that the retaliatory actions "would have chilled or silenced a person of ordinary firmness by alleging 'more than minimal harms'"—the filing of a false disciplinary charge, placement in administrative segregation, and interference with parole hearing; finding same against different defendant based on "chilling conduct—the threat of physical violence" via threat to punch plaintiff in the mouth); *Brodheim*, 584 F.3d at 1265–66, 1271 (finding genuine dispute of fact as to chilling effect where defendant wrote on rejected interview request, "I'd also like to warn you to be careful what you write, req[u]est on this form") (alteration in original).

This Court finds on this record that no reasonable jury could conclude that Pedro's statements during these meetings would chill or silence a person of ordinary firmness from exercising his or her First Amendment rights. According to Plaintiff, over the course of four months, Pedro threatened to move Plaintiff to a "less safe" unit within TRCI, to not provide him with the conflict policy's protection in the future, and to hold Plaintiff "accountable" for violating his order not to ask for anything. These statements were improper but also speculative, vague, and not sufficiently serious to chill a person of ordinary firmness. Further, roughly four months passed between the first two and the third of Pedro's alleged threats with no follow-through action taken to move Plaintiff from unit 5, ECF 88-1; no further unpleasant incidents reported by Plaintiff regarding any inmate; no submission of a conflict request that could not have been legitimately denied; and multiple communications from Plaintiff to various officials complaining about inaction on his requests. Given Plaintiff's limited history of unpleasant interactions at TRCI over roughly five years, and then Pedro's lack of action for four months, no reasonable jury could conclude on this record that a person of ordinary firmness could be chilled by Pedro's conduct.

In the alternative, Pedro is entitled to qualified immunity on these claims.

## CONCLUSION

This Court has reviewed de novo the portions of Judge Acosta's F&R to which Plaintiff objected. Judge Acosta's F&R, ECF 106, is adopted as supplemented in this Opinion and Order. This Court GRANTS Defendants' Motion for Summary Judgment, ECF 87.

**IT IS SO ORDERED**.

DATED this 16th day of June, 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge
